

FILED

OCT 2 2 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1

2

3

4

UNITED STATES BANKRUPTCY COURT

5      EASTERN DISTRICT OF CALIFORNIA

6

7

FILED

Oct 22, 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| In re | ) Case No. 10-53637-E-13 |
| G. WENDELL ULBERG, JR. and KATHLEEN M. ULBERG | ) ) ) CAED Case # 2:13-cv-2219 WBS |
| Debtor(s). | ) ) |
| ———————————————— | ) ) |
| G. WENDELL ULBERG, JR. and KATHLEEN M. ULBERG, | ) Adv. Pro. No. 11-2122 ) Docket Control No. SW-4 |
| Plaintiff(s), v. | ) ) ) |
| BANK OF AMERICA, N.A., et al., | ) ) ) |
| Defendant(s). | ) ) |
| ———————————————— | ) |

PROPOSED
MEMORANDUM OPINION AND DECISION
CONSTITUTING FINDINGS OF FACT AND CONCLUSIONS OF LAW
28 U.S.C. § 157(c)(1)

This Adversary Proceeding was commenced by G. Wendell Ulberg, Jr. and Kathleen M. Ulberg ("Plaintiffs"), who are also Chapter 13 Debtors in a bankruptcy case pending before this court (Bankr. E.D. Cal. No. 10-53637). On March 15, 2011, Plaintiffs filed the First Amended Complaint ("FAC"), Dckt. 11, which is the complaint now at issue before this court. Two of the defendants in the Adversary Proceeding are Bank of America, N.A. ("BANA") and Recontrust Company ("Recontrust"), collectively the "BANA Defendants."

1   This Adversary Proceeding centers on the ownership of real
2   property commonly known as 1382 Mineral Springs Trail, Alpine
3   Meadows, California (the "Property").  Plaintiffs assert that a
4   non-judicial foreclosure sale conducted for BANA on December 27,
5   2010, was improper and that any transfer of property alleged to
6   have occurred pursuant thereto should be set aside.  The Plaintiffs
7   also seek a monetary recovery from the BANA Defendants.

8   On November 29, 2011, the bankruptcy judge issued a Memorandum
9   Opinion and Decision granting BANA's motion to dismiss with regard
10  to the Third and Seventh Causes of Action, and denying the motion
11  as to all other causes of action.[1]  The Third Cause of Action is
12  for unfair business practices pursuant to California Business and
13  Professions Code 17200 et seq.  The Seventh Cause of Action is for
14  declaratory relief.  Recontrust was not a party to the motion to
15  dismiss and is not included in the order thereon.[2]

16  The "BANA Defendants" have filed this Motion for Summary
17  Judgment on all causes of action stated against each of them in the
18  FAC.  For BANA, this is for the Fraud (First), Negligent
19  Misrepresentation (Second), Rescission or Cancellation of Trustee's
20  Deed (Fifth), Quite Title (Sixth), and Injunctive (Eighth) Causes of
21  Action.  For Recontrust, summary judgment is sought for all of the
22  preceding causes of action and also for the Unfair Business
23  Practices (Third), Intentional Interference with Contractual

---

25  [1]  Dckt. 109. The ruling on the Motion to Dismiss pre-dated the ruling of the United States Supreme Court in *Stern v. Marshall*, 564
26  U.S. ____ , 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011).  None of the parties objected to the bankruptcy judge entering the order on that
27  motion and the bankruptcy court accepted such non-objection as consent to this court entering that order.

28  [2] Order, Dckt. 110.

1  Relations (Fourth), and Declaratory Relief (Seventh) Causes of
2  Action. Motion, Dckt. 171.  The BANA Defendants are not parties to
3  the Eighth Cause of Action, and BANA is not a party to the Fourth
4  Cause of Action.

5      The Motion for Summary Judgment was properly served on the
6  Plaintiffs, Plaintiffs' counsel, and the counsel for Pacific Crest
7  Partners, Inc. ("Pacific Crest") and John Mudgett ("Mudgett"), the
8  other two named defendants in  this Adversary Proceeding, on March
9  28, 2013.  Pursuant to Local Bankruptcy Rule 9014-1(f)(1), proper
10 notice was provided.  The Plaintiffs filed an opposition to the
11 Motion for Summary Judgment.  Pacific Crest and Mudgett, who are
12 not parties to this Motion for Summary Judgment, filed a response.

13
14                   **RELATION OF ADVERSARY PROCEEDING TO**
                   **PLAINTIFFS' CHAPTER 13 CASE**

15     This Adversary Proceeding is being conducted as part of
16 Plaintiffs' Chapter 13 Plan.  Plaintiffs confirmed their
17 5th Amended Chapter 13 Plan on October 25, 2011.[3]  The confirmed
18 Chapter 13 Plan (Section VII, Additional Provisions) provides for
19 this litigation.  The Chapter 13 Trustee is $2,000.00 of each
20 monthly Chapter 13 Plan payment for the secured claim which would
21 exist if the foreclosure is determined invalid or is rescinded, or
22 to pay for damages to Pacific Crest (the party asserting that it
23 purchased the Property at a foreclosure sale) from being wrongfully
24 enjoined by the automatic stay (the equivalent of Fed. R. Civ. P.
25
26
27
28
     [3]  Order, Chapter 13 Plan; Chapter 13 Case Dckts. 125, 145.

                             3

1  Rule 65(c) damages).[4]

2      Determination of these non-bankruptcy issues by this federal

3  court is necessary for the proper and timely exercise of rights and

4  obligations under the Bankruptcy Code.  The Chapter 13 Plan in this

5  case is limited by the Bankruptcy Code to a period of no more than

6  five years.[5]  The Chapter 13 bankruptcy case having been filed in

7  December 2010, and this adversary proceeding having been filed in

8  February 2011 (reflecting diligent prosecution in this court by the

9  Plaintiffs), abstaining pursuant to 28 U.S.C. § 1334(c)(1) is not

10  practical.    No  contention  has  been  made  that  the  California

11  Superior Court could conclude this matter within the Bankruptcy

12  Code deadlines for the Chapter 13 Plan.

13
                   **NON-CORE RELATED TO ADVERSARY PROCEEDING**
14                    **No 11 U.S.C. § 157(d)(2) Consent**

15      This Adversary Proceeding was commenced prior to the United

16  States Supreme Court addressing the proper exercise of federal

17  judicial power and federal court jurisdiction for cases under the

18  Bankruptcy Code.  *Stern v. Marshall*, 564 U.S. ____, 131 S. Ct.

19  2594, 180 L. Ed. 2d 475 (2011).  Because the issue arose after this

20

21  _____

      [4]  The bankruptcy judge acknowledges that when filing bankruptcy
22  becomes a viable option for many debtors, they will not have
    sufficient assets to obtain a bond to support an injunction in state
23  or federal court.  Debtors turn to the bankruptcy court and automatic
    stay in place of an injunction.  As in the Plaintiffs' bankruptcy
24  case, this court allows debtors to self fund a bond with what would be
    the monthly mortgage payment, with such monies held by the Chapter 13
25  Trustee.  If the debtor is correct and the foreclosure sale is
    invalid, then a fund exists to make the post-petition mortgage
26  payments.  If the debtor fails and the foreclosing creditor or third
    party purchaser at the foreclosure sale has been wrongly detained by
27  the injunction (the automatic stay), then this fund constitutes a bond
    from which the Rule 65(c) damages may be compensated.
28
      [5]  11 U.S.C. § 1322(d).

                                   4

1  Adversary Proceeding had been commenced, the bankruptcy judge
2  allowed the parties to expressly consent on the record for the
3  bankruptcy judge to issue orders and the judgment in this arguably
4  non-core "related-to" matter.  28 U.S.C. §§ 1334(b) and 157(c)(2).

5      Not all parties to this Adversary Proceeding have consented to
6  the bankruptcy judge entering final orders and the judgment in this
7  proceeding.  Pursuant to 28 U.S.C. §157(c)(1), when consent has not
8  been given for non-core related-to matters, the bankruptcy judge
9  submits proposed findings of fact and conclusions of law to the
10 district court.  The district court judge, after review of the
11 proposed findings and conclusions, enters the final orders and
12 judgment.

13                **ALLEGATIONS IN FIRST AMENDED COMPLAINT**

14     Plaintiffs allege in the FAC that they were the owners of the
15 Property and have lived there since 1986.  The Property was subject
16 to two claims held by BANA which were secured by two separate deeds
17 of trust: one claim with a balance of $218,741.00 and a second with
18 a balance of $151,186.00.  BANA noticed a default and then
19 scheduled a non-judicial foreclosure sale under one of the deeds of
20 trust.  Plaintiffs assert that they submitted a loan modification
21 application to BANA in June 2010 for a modification under the HAMP
22 program. Plaintiffs represent that it is their understanding that
23 the HAMP Guidelines prohibit foreclosure sales to be conducted
24 while a loan is under HAMP review.

25     Plaintiffs further assert that in reliance on these
26 representations, Plaintiffs stopped making payments while they
27 awaited review of the requested loan modification.  Plaintiffs
28 allege that they also refrained from taking any other actions to

1  protect their ownership in the Property, including not keeping
2  their account current or filing for bankruptcy sooner.   It is
3  alleged that BANA publically announced that there would be a
4  moratorium on all foreclosure sales effective December 27, 2010.

5       Plaintiffs contend that on December 24, 2010, Mudgett, who is
6  identified as a real estate salesperson for Pacific Crest, came to
7  the Property and told Plaintiffs that the Property would be
8  foreclosed on December 27, 2010.  Plaintiffs assert that they then
9  informed Mudgett that a loan modification was pending with BANA.

10      Plaintiffs assert that prior to the December 27, 2010,
11  Recontrust, the trustee under the Deed of Trust, was advised of
12  Plaintiffs' bankruptcy. When provided with this information, it is
13  alleged that Recontrust represented that the file would be put into
14  "bankruptcy status" and that the sale would not proceed.

15      Notwithstanding the above, Plaintiffs assert that Recontrust
16  conducted a non-judicial foreclosure sale on December 27, 2010,
17  with Pacific Crest purchasing the Property for $190,000.00.

18                    **MOTION FOR SUMMARY JUDGMENT**

19      Summary judgement is appropriate when there exists "no genuine
20  issue as to any material fact and the moving party is entitled to
21  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Supreme
22  Court discussed the standards for summary judgment in a trilogy of
23  cases, *Celotex Corporation v. Catrett*, 477 U.S. 317, 327 (1986),
24  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and
25  *Matsushita Electrical Industry Co. v. Zenith Radio Corp.*, 475 U.S.
26  574 (1986).   In a motion for summary judgment, the moving party
27  bears the initial burden of persuasion in demonstrating that no
28  issues of material fact exist.  *See, Anderson* at 255.  A genuine

                                6

1 issue of material fact exists when the trier of fact could
2 reasonably find for the non-moving party. *Id.* at 248. The court
3 may consider pleadings, depositions, answers to interrogatories and
4 any affidavits. *Celotex* at 323. Where the movant bears the burden
5 of persuasion as to the claim, it must point to evidence in the
6 record that satisfies its claim. *Id.* at 252.

7    The BANA Defendants seek summary judgment as to all of the
8 Causes of Action in the FAC.   The court reviews the Motion and
9 Responsive Pleadings as follows.

10 <u>**Summary of BANA Defendants' Relief Sought and Grounds**</u>

11

12         **First and Second Causes of Action - Fraud**
           **and Negligent Misrepresentation**

13    BANA Defendants state that around January 2010 Plaintiffs
14 hired a foreclosure consultant, Sovereign Financial ("Sovereign"),
15 to communicate with the BANA Defendants.  Sovereign then acted as
16 Plaintiffs' specialist representative to negotiate a loan
17 modification for the subject property.   When contacted by
18 Sovereign, the BANA Defendants assert that (1) BANA never informed
19 Plaintiffs that Plaintiffs were being considered for a loan
20 modification and (2) BANA communicated to Sovereign, as Plaintiffs'
21 representative, that Plaintiffs were not eligible for a loan
22 modification.

23    Further, BANA contends that it never represented either to
24 Plaintiffs directly or to Sovereign, as Plaintiffs' representative,
25 that BANA would postpone the December 27, 2010 foreclosure sale.
26 To the extent that there was any representation that the
27 foreclosure sale would be postponed, the BANA Defendants contend
28 that the evidence shows Plaintiffs relied only on representations

7

1  made by Sovereign.  To the extent that the "representation" by BANA
2  is based on Plaintiffs' belief that the foreclosure sale had to be
3  postponed due to the HAMP guidelines, such representations were
4  made by Sovereign, not BANA.

5    The BANA Defendants also assert Sovereign provided Plaintiffs
6  with documents needed to file for bankruptcy, and this was done
7  because both Sovereign and the Plaintiffs knew that there was no
8  representation by BANA that the non-judicial foreclosure sale would
9  be postponed.  The Plaintiffs attempted to file a bankruptcy case
10 in *pro se* the day of the sale, but were unsuccessful before the
11 non-judicial foreclosure sale was conducted on December 27, 2010.
12 In addition to the other BANA evidence, it is asserted that the
13 filing of the bankruptcy case attempting to stop the foreclosure
14 sale on December 27, 2010, demonstrates that there was no reliance
15 on any representation that the foreclosure sale would be postponed.

16   Further, it is asserted that Plaintiffs argue and present
17 evidence that Sovereign requested that the sale be postponed, which
18 indicates that Plaintiffs and Sovereign knew that there was no HAMP
19 or moratorium required postponement.  Further, that the evidence
20 shows that Plaintiffs were only told by Sovereign that Sovereign
21 would attempt to delay the sale, not that BANA stated that the
22 December 27, 2010 sale was postponed.

23   With respect to the Plaintiffs' contention that BANA
24 represented that there was a moratorium on BANA conducting
25 non-judicial foreclosure sales, Plaintiffs only make reference to
26 unidentified "news articles" which they purport constitute a public
27 statement by BANA.  In a footnote to the Motion BANA acknowledges
28 that it had a partial moratorium between December 20, 2010 and

8

1   January 2, 2011, but that the moratorium did not include loans
2   owned by Fannie Mae (who the BANA testimony identifies as the owner
3   of the loan for which the non-judicial foreclosure sale was
4   conducted).

5
        **Third Cause of Action - Unfair Business Practices**
6       **Claim (Recontrust Only, Previously Dismissed as to BANA)**

7       The BANA Defendants state that there is no evidence that
8   Recontrust engaged in activity that can be construed as unlawful,
9   unfair, or fraudulent competition.   These Defendants direct the
10  court to the prior dismissal of this cause of action as against
11  BANA.[6]   Recontrust states that Plaintiffs did not communicate
12  directly with Recontrust and that Plaintiffs have not provided
13  evidence that Recontrust made any statements to Sovereign.
14  Recontrust argues that summary judgment on this cause of action is
15  warranted since there is no evidence that any representations were
16  made that would deceive the public. Recontrust states that it
17  served as the foreclosure trustee and was not involved in the loan
18  modification program.

19
        **Fourth Cause of Action - Interference with**
20      **Contractual Claims (BANA Not a Party to this Claim)**

21      BANA Defendants argue that Plaintiffs have not satisfied the
22  elements for this cause of action because no loan modification was
23  ever submitted to BANA, and the Note and Deed of Trust do not
24  include provisions that a foreclosure sale must be stayed pending
25  approval of a loan modification.   Defendants argue that without a
26  breach of contract there can be no interference with the
27

28
        [6]  Memorandum Opinion and Decision, Dckt. 109.

                                    9

1  contractual relationship between Plaintiffs and BANA by the BANA
2  Defendants.  Further, that no evidence has been presented showing
3  that Recontrust, as the trustee under the Deed of Trust, engaged in
4  any conduct to induce BANA to take, or not take, any action.

**Fifth and Sixth Causes of Action - Restoration
of Title and Quiet Title**

7      The BANA Defendants state that there is no evidence to support
8  the claim that the foreclosure sale should be reversed based on the
9  aforementioned causes of action.  There is no independent basis in
10  these causes of action for the relief requested.

11      **Seventh Cause of Action - Declaratory Relief**

12      The BANA Defendants argue that the court should dismiss this
13  claim against Recontrust for the same reason that the court
14  dismissed the claim against BANA.[7]

15                     **PLAINTIFFS' OPPOSITION**

16      Plaintiffs respond that in May of 2010 they retained Sovereign
17  to pursue a loan modification with BANA and that it was only
18  through Sovereign that Plaintiffs submitted loan modification
19  requests to BANA.  Plaintiffs contend that BANA reported the loan
20  modification to be in active review and thereon continued the
21  foreclosure originally scheduled for December 13, 2010, to
22  December 27, 2010.

23      Plaintiffs assert that they relied on representations by BANA
24  that the December 27, 2010 foreclosure sale would be continued.
25  Additionally, based on Plaintiffs' understanding of the HAMP
26  Guidelines a foreclosure sale could not go forward if their loan

27

28      [7]  Memorandum Opinion and Decision, Dckt. 109.

1   modification was in active review.  Further, Plaintiffs assert that
2   they relied on their belief that BANA announced (which the evidence
3   shows to be a newspaper article read by Plaintiffs) a moratorium on
4   foreclosures through the continued December 27, 2010, foreclosure
5   sale date.

6
7   **First and Second Cause of Action – Fraud and Negligent Misrepresentation**

8   Plaintiffs argue that the BANA Defendants have failed to
9   refute the allegations in the FAC because the BANA Defendants have
10  not provided testimony from the persons who were working on the
11  Plaintiffs' loan and the foreclosure sale.  Plaintiffs argue that
12  the Declaration of Karen Slyapich (BANA employee) is not reliable
13  since it is unclear as to whether Ms. Slyapich worked at BANA in
14  2010 and there is no foundation for her testimony.

15  Plaintiffs assert that BANA actually received the loan
16  modification request despite statements to the contrary, and that
17  the October 25, 2010 reinstatement letter alleged to have been sent
18  by BANA was not sent to Plaintiffs at an accurate mailing address
19  (it being sent to the property street address when mail is only
20  delivered to the Plaintiffs' post office box).  Plaintiffs contend
21  that to the extent that the alleged misrepresentations do not
22  constitute fraud, they are material misrepresentations, due to
23  negligence or recklessness, concerning the Plaintiffs loan and the
24  scheduled foreclosure. Plaintiffs assert that there are triable
25  issues of fact as to whether Defendants made such alleged
26  misrepresentations.

27  ///

28  ///

11

1   **Third Cause of Action – Unfair Business Practices Claim**
    **(Recontrust Only, Previously Dismissed as to BANA)**
2

3   The Plaintiffs do not oppose summary judgment being granted
4   the BANA Defendants on the Third Cause of Action.

5
    **Fourth Cause of Action – Intentional Interference with**
6   **Contractual Relations**

7   Plaintiffs argue that they were prevented from performing
8   under the note and deed of trust, from completing the loan
9   modification, and from reinstating the loan when Recontrust
10  conducted the December 27, 2010 non-judicial foreclosure sale.

11
    **Fifth, Sixth, and Seventh Causes of Action – Cancel**
12  **Trustee's Deed, Quite Title, and Declaratory Relief**

13  Plaintiffs argue that because there are triable issues of fact
14  with respect to the first, second, and fourth causes of action,
15  there are also triable issues of fact with respect to the Fifth,
16  Sixth, and Seventh Causes of action.

17           **REVIEW OF EVIDENCE PRESENTED BY BANA DEFENDANTS**

18  The evidence presented by the BANA Defendants in support of
19  the Motion for Summary Judgment includes the following:

20  <u>Declaration of Karen Slyapich, Dckt. 174.</u>

21  The first witness is Karen Slyapich, who provides her
22  declaration in support of the Motion. Ms. Slyapich's testimony is
23  summarized as follows.

24  A.   Karen Slyapich ("Slyapich") is an Assistant Vice President
25  of BANA and authenticates the Bank documents presented in support
26  of the Motion.

27  B.   In April 2004 the Plaintiffs borrowed $247,000.00 from
28  BANA ("2004 Loan"), which loan is secured by a deed of trust

12

1   against the Property.  Note evidencing the 2004 Loan and Deed of
2   Trust, Exhibits A and B, respectively.  Dckt. 179.

3       C.  The 2004 Loan was sold by BANA to the Federal National
4   Mortgage Association ("Fannie Mae").

5       D.  BANA retained the servicing rights for the 2004 Loan.

6       E.  On August 6, 2010, Recontrust, the trustee under the deed
7   of trust, issued a Notice of Default and Election to Sell under the
8   Deed of Trust which secured the 2004 Loan.  Notice of Default,
9   Exhibit C.  *Id.*

10      F.  In November 2010, a Notice of Trustee's Sale under the
11  Deed of Trust was issued and recorded on November 19, 2010, with a
12  Trustee's Sale set for December 13, 2013.  Notice of Trustee's
13  Sale, Exhibit D.  *Id.*

14      G.  The Trustee's Sale was postponed to December 27, 2010.

15      H.  On December 27, 2010, the Trustee's Sale was conducted by
16  Recontrust.  A Trustee's Deed was issued to Pacific Crest as the
17  successful purchaser at the sale.  Trustee's Deed, Exhibit D.  *Id.*

18      I.  BANA maintains a record of its communication with
19  borrowers.  A copy of the communications relating to the 2004 Loan
20  during the Fall of 2010, is filed as Exhibit F.  *Id.*  These records
21  disclose the following communications.

22          1.  On October 22, 2010, a call was received by BANA by an
23  unnamed representative of the Plaintiffs requesting a loan
24  modification for the 2004 Loan.  Financial information was
25  submitted over the phone and the caller was informed that the
26  Plaintiffs did not qualify for a loan modification.

27          2.  On October 22, 2010, BANA received a call from an
28  unnamed representative of the Plaintiffs again requesting a loan

13

1 modification for the 2004 Loan.  Though the financial information
2 was different, the Plaintiffs' representative was again notified
3 that the Plaintiffs did not qualify for a loan modification.

4     3.  On November 18, 2010, BANA received a call from a
5 representative (identified in the notes as Candy Cabrera)
6 requesting the status of the loan modification for the 2004 Loan.
7 The note states that Ms. Cabreara was advised that the 2004 Loan
8 was a Fannie Mae loan and needed to be transferred.  The note
9 further states that the BANA representative could not transfer the
10 call.

11     4.  On November 29, 2010, Jamie Cabrera from Sovereign
12 called BANA to check on the status of the loan modification for the
13 2004 Loan.  The notes state that the call was transferred to the
14 Fannie Mae "Foreclosure Q."

15     5.  On December 6, 2010, a call was received from "h/o" to
16 check on the status of the loan modification for the 2004 Loan.
17 The notes state that "the h/o is not in reveiw right now or needing
18 any docs at this time so i advised th h/o to call back in check the
19 status of the loan mod.nbkweof." (sic.)

20     a.  On December 21, 2010, four calls were made to
21 BANA by a representative of the Plaintiffs requesting
22 information regarding the status of the loan modification
23 for the 2004 Loan.

24     (1)  For the first call, the notes state
25 that there were no updates and the representative was
26 given the modification number and the call
27 transferred.

28     (2)  The second call entry states that it

1    was transferred to the home retention department

2    ("hrd").

3              (3)     The third call entry states that Jamie

4    Cooper from Sovereign called and was advised that

5    the 2004 Loan was not in a modification.

6              (4)     The fourth call is from an unnamed

7    representative of the Plaintiffs, who was told

8    that the 2004 Loan was not in modification.

9        6.   Slyapich has reviewed the records of BANA and found no

10   record of a loan modification being submitted by Plaintiffs.

11       7.   During the period from December 20, 2010, through

12   January 2, 2011, BANA had in place a partial moratorium on

13   foreclosures.  The moratorium did not include Fannie Mae owned

14   loans, such as the 2004 Loan.

15   **Declaration of Bernard Kornberg, Dckt. 713.**

16       A.   Bernard Kornberg is an attorney of record for the BANA

17   Defendants in this Adversary Proceeding.

18       B.   Mr. Kornberg authenticates the following Exhibits:

19       1.   Exhibit H, excerpts from November 1, 2012, deposition

20   of Plaintiff George Wendell Ulberg, Jr. ("G. Wendell Ulberg").

21       2.   Exhibit I, excerpts from November 1, 2012, continued

22   deposition of Plaintiff G. Wendell Ulberg.

23       3.   Exhibit J, excerpts of G. Wendell Ulberg's responses

24   to the BANA Defendants Request for Admissions.

25       4.   Exhibit K, excerpts of G. Wendell Ulberg's responses

26   to the BANA Defendants Special Interrogatories, Set One.

27

28

1 | **Exhibits H and I, Excepts of November 2, 2012 Deposition**
2 | **of George Wendell Ulberg, Jr., Dckt. 179, pgs. 47-158.**

3 | ### Exhibit H

4 | A.  G.  Wendell  Ulberg  filed  an  application  for  a  loan
5 | modification with Sovereign.  Reporter's Transcript ("RT") 13:2-4.

6 | B.  Sovereign is a company that assists borrowers in obtaining
7 | loan modifications.  RT 13:17-18.

8 | C.  G.  Wendell  Ulberg  did  not  submit  a  loan  modification
9 | application  directly  to  BANA,  but  provided  documents  and
10 | information to Sovereign, which was responsible for submitting the
11 | loan modification application to BANA.  RT 14:19-21; 34:18-23.

12 | D.  The  persons  at  Sovereign  with  whom  G.  Wendell  Ulberg
13 | communicated were Candi Cabrera, Jamie Cabrera, and Candy Bronzi.
14 | RT 13:22-25, 14:1-12; 54:7-9.

15 | E.  Representatives  of  Sovereign  "intimated"  that  a  loan
16 | modification for the 2004 Loan was in process. RT 63:10-17.

17 | F.  The representatives of Sovereign told G. Wendell Ulberg
18 | that a foreclosure would not occur if the 2004 Loan was in active
19 | loan modification.   No one at or for BANA represented that the
20 | foreclosure would be postponed if the 2004 Loan was in active loan
21 | modification.   RT 54:4-9.

22 | G.  G. Wendell Ulberg relied on Sovereign to present and move
23 | the loan modification with BANA and for any postponements of the
24 | foreclosure sale for the Deed of Trust securing the 2004 Loan.
25 | RT 63:14-21; 75:1-7; 76:7-10.

26 | H.  G. Wendell Ulberg never contacted BANA to confirm that the
27 | loan  modification  for  the  2004  Loan  had  been  submitted  by
28 | Sovereign.   RT 64:25, 65:1:10; 69:22-25, 70:1-14.

16

1   I.  Nobody at Sovereign ever told G. Wendell Ulberg that the
2   loan modification application for the 2004 Loan had been approved
3   or denied.  RT 73:6-12.

4   J.  G. Wendell Ulberg's knowledge of the BANA moratorium on
5   foreclosures was obtained from news accounts and Sovereign, not
6   from anyone at BANA.  RT 80:6-22; 81:6-19.

7   K.  Sovereign did not advised G. Wendell Ulberg that the
8   foreclosure on the Deed of Trust securing the 2004 Loan could not
9   go forward due to a foreclosure moratorium.  RT 81:2-5.

10  L.  G. Wendell Ulberg was advised of postponements of the
11  non-judicial foreclosure sale by Sovereign.  RT 83:10-17; 85:21-23.

12  M.  Jamie Cabrera of Sovereign advised G. Wendell Ulberg that
13  a postponement of the December 27, 2010 foreclosure sale was highly
14  unlikely.  RT 84:1-5.

15  N.  Jamie Cabrera of Sovereign advised G. Wendell Ulberg that
16  Mr. Cabrera would try to get the December 27, 2010 foreclosure sale
17  postponed.  RT 86:10-16.

18  O.  Jamie Cabrera of Sovereign provided G. Wendell Ulberg with
19  forms and recommended that G. Wendell Ulberg file bankruptcy. RT
20  90:17-25, 91:1-22.

21  P.  G. Wendell Ulberg mistakenly, at the direction of Jamie
22  Cabrera of Sovereign, went to the County Assessor's Office in
23  Auburn, California, to file bankruptcy on the morning of
24  December 27, 2010.  RT 94:1-14.

25  Q.  G. Wendell Ulberg arrived at the U.S. Bankruptcy Court in
26  Sacramento, California, at approximately 10:00 a.m. on December 27,
27  2010.  He did not have all of the necessary forms provided to him
28  by Sovereign, and obtained additional required forms from the

17

1  Court.   After completing the additional forms, G. Wendell Ulberg
2  states that he filed the bankruptcy documents at 11:01 a.m. on
3  December 27, 2010. [11:01 a.m. is the filing time stamped on the
4  bankruptcy petition filed by the Plaintiffs.   10-53637 Dckt.1.]
5  RT 96:19-25; 97:1-6.

6              **REVIEW OF EVIDENCE PRESENTED BY PLAINTIFFS**
7  **Declaration of G. Wendell Ulberg, Dckt. 184.**

8        The testimony of G. Wendell Ulberg in opposition to the Motion
9  for Summary Judgment is summarized as follows.

10       A.   In December 2010 the Plaintiffs owned the Property.

11       B.   In May 2010, Plaintiffs entered into a contract with
12  Sovereign to prepare a loan modification request to be submitted to
13  BANA pursuant to the HAMP Program.

14       C.   It was G. Wendell Ulberg's understanding (from an unstated
15  source) that the HAMP Guidelines were applicable to BANA for the
16  loan and that BANA could not foreclose "while loan modifications
17  were in active review."

18       D.   In August 2010, Candy Bronzi of Sovereign informed
19  G. Wendell Ulberg that BANA would send a Reinstatement Letter and
20  allow the Plaintiffs to bring their loan current over time.

21       E.   On September 24, 2010, Stephanie Bailey, with BAC Field
22  Services (a BANA related entity) appeared at the Property to verify
23  that it was occupied.   G. Wendell Ulberg states that he told
24  Ms. Bailey that a loan modification was pending.  Ms. Bailey gave
25  G. Wendell Ulberg a phone number to call, which G. Wendell Ulberg
26  did and told the person (not identified in the declaration) at that
27  number "[t]hat through Sovereign Financial, we had submitted a loan
28  modification package."

                                   18

1    F.   The Plaintiffs did not receive the October 25, 2010 letter
2  from BANA, Exhibit G.   The letter is addressed to the street
3  address for the Property, but the Postal Service does not deliver
4  mail to the street address.  BANA sends the loan account statements
5  to the Plaintiffs' Post Office Box.   The letter states that BANA
6  asserted $9,667.44 was due on the loan, and if the Plaintiffs had
7  received the letter they would have borrowed the money from family
8  members to bring the loan current.

9    G.   G.  Wendell  Ulberg  also  testifies  that  it  was  his
10  "understanding" based on (unidentified) news reports that BANA
11  issued a moratorium on all foreclosure sale in California up and
12  through December 27, 2010.  He testifies that the news reports did
13  not distinguish between Fannie Mae and non-Fannie Mae loans.

14    H.   Further, that he "[r]elied on these news reports in not
15  taking more steps to protect my house from foreclosure."

16    I.   Stephanie Bailey, the BAC Field Services representative
17  who checked the occupancy of the Property did not tell G. Wendell
18  Ulberg that the foreclosure sale was continued to December 27,
19  2010.   G. Wendell Ulberg testifies that all she told him is that
20  she was there to verify occupancy.

21    J.   On December 24, 2010, Mudgett came to the Property.   He
22  told G. Wendell Ulberg that the foreclosure sale was set for
23  December 27, 2010.

24    K.   G. Wendell Ulberg testifies that prior to December 24,
25  2010, "I had relied on the statements from [BANA] to my agent
26  Sovereign that my residence would not be foreclosed on while my
27  loan modification request was under active review."

28  ///

19

1    L.  If not for their reliance on the foreclosure sale having
2  to be postponed, the Plaintiffs would have taken other steps to
3  stop the foreclosure sale, including borrowing money from other
4  family members or retaining bankruptcy counsel.

5    M.  G. Wendell Ulberg believes that the Property has a value
6  of $450,000.00 when the bankruptcy case was filed.  The Property
7  secured the BANA loan in the amount of $220,447.00 secured by the
8  First Deed of Trust and another loan in the amount of $151,000.00
9  secured by a Second Deed of Trust against the Property.

10  **Declaration of Jamie Cabrera filed March 15, 2011, in Support**
**of Motion for Preliminary Injunction in this Adversary**
11  **Proceeding,  Exhibit 1, Dckt. 183.**

12    Jamie Cabrera provides the following testimony in opposition
13  to the Motion for Summary Judgment.

14    A.  Jamie Cabrera is an Advocacy Specialist with Sovereign,
15  having been employed in that capacity for two years.

16    B.  On or about August 27, 2010, Plaintiffs retained Sovereign
17  to assist them with obtaining a modification of the loan secured by
18  the Property.

19    C.  At that time Sovereign submitted a loan modification
20  request to BANA under the HAMP Program.

21    D.  It was Jamie Cabrera's understanding (from an unidentified
22  source or base of knowledge) that under the HAMP Program
23  Guidelines, BANA could not proceed with a foreclosure sale if a
24  loan modification request was under "active review."

25    E.  During August, September, and October, 2010, there were
26  seven communications with BANA confirming the receipt of financial
27  information from Sovereign concerning the Plaintiffs.  Sovereign
28  sent all of the financial information timely to BANA.

F.   Jamie Cabrera discussed with BANA a postponement of the December 7, 2010 scheduled non-judicial foreclosure sale.   Jamie Cabrera testifies that the BANA representative stated that the sale should be postponed because a loan modification was under active review.

G.   Jamie Cabrera testifies that in a December 9, 2010, phone conversation with "Joel" at BANA, confirmed that the Plaintiffs' loan modification request was under active review.

H.   Jamie Cabrera testifies that in a December 17, 2010, phone conversation with Lee at BANA, represented that the Plaintiffs' loan modification request was under active review, and that a request for postponement of the December 27, 2010 foreclosure sale had been made (to an unidentified person).

I.   On December 27, 2010, Jamie Cabrera spoke with Kimberly, a representative with Recontrust, concerning the non-judicial foreclosure sale which was set for 9:15 a.m. and to inform Recontrust that the Plaintiffs would be filing bankruptcy.   A copy of the filed bankruptcy petition was forwarded by Jamie Cabrera to Recontrust.

**Declaration of Michael Mankarious**

Michael Mankarious provides the following declaration in opposition to the Motion for Summary Judgment.

A.   Mr. Mankarious is the chief financial officer of Sovereign.

B.   Exhibit 2 is a record of the contacts by representatives of Sovereign with BANA concerning the Plaintiffs' loan.

C.   In Sovereign's files Mr. Mankarious located two 70-page loan modification requests.   He states that these were sent by

1  facsimile to BANA on December 13, 2010, and December 18, 2010.
2  Exhibits 3 and 4 filed in opposition to the Motion for Summary
3  Judgment are portions of the two loan modification requests.

4        D. Exhibit 5 is an excerpt from the HAMP Program Guidelines.
5  Mr. Mankarious directs the court to Section 3.2 which states that
6  a servicer of a loan, upon acceptance of a request for HAMP
7  consideration, must suspend any pending foreclosure sale.

8        E. Mr. Mankarious states that the Plaintiffs' situation is
9  one in which the HAMP Guidelines were not followed and the loan was
10 "Double Tracked," with the foreclosure proceeding while a HAMP loan
11 modification was pending with BANA.

12       F. Exhibit 6 is a copy of Sovereign's telephone and fax
13 records for December 13, 2010, which he states shows the
14 transmission of a document to BANA at 5:50 p.m.

15       G. Exhibit 7 is a copy of Sovereign's telephone and fax
16 records which he states shows the transmission of the loan
17 modification request to BANA on December 20, 2010.

18
19                    **UNDISPUTED FACTS OR THOSE FOR**
                   **WHICH THERE ARE NO GENUINE DISPUTES**

20 **Agreed Undisputed Facts**

21       The following undisputed facts have been agreed to by the
22 parties. *See* BANA Defendant's Statement of Undisputed Facts,
23 Dckt. 177, and Plaintiff's Response to Undisputed Facts, Dckt. 185.
24 The numbering is that used by the BANA Defendants in the Statement
25 of Undisputed Facts, with of the alleged not undisputed designated
26 by the word "Disputed."

27 ///

28 ///

| Fact Number, BANA Defendants' Statement | Undisputed Fact | Disputed Fact |
|---|---|---|
| 1 | Plaintiff G. Wendell Ulberg is and has been a self-employed licensed real estate agent since 1985. | |
| 2 | As part of his profession, G. Wendell Ulberg has, on multiple occasions, represented parties purchasing property in foreclosure sales. | |
| 3 | G. Wendell Ulberg was responsible for all communications with Defendants and with Sovereign Financial, his loan modification consultant. | |
| 4 | Kathleen Ulberg did not take part in the efforts to receive a loan modification or have any communication with BANA. | |
| 5 | Plaintiffs owned and resided in the property known as 1382 Mineral Springs Trail, Alpine Meadows, CA 94146 (the "Property") since 1986. | |
| 6 | In April of 2004, BANA issued a note (the "Note") to Plaintiffs so that they could borrow $247,000 for the purpose of repairing and remodeling the Property (the "Loan"). | |
| 7 | To secure the obligation, Plaintiffs entered into a deed of trust against the Property (the "Deed of Trust"). The Deed of Trust named BANA as beneficiary. | |
| 8 | | Disputed |
| 9 | BANA retained the servicing rights to the loan. | |
| 10 | In 2010, Plaintiffs ran into financial difficulties and defaulted on the Loan. | |
| 11 | On August 6, 2010, Recontrust issued a notice of default and election to sell under deed of trust (the "Notice of Default"). | |
| 12 | The Notice of Default was posted on the Property and subsequently recorded on August 9, 2010 in the Placer County recorder's office. | |
| 13 | The Notice of Default listed Plaintiffs arrears as $6,044.34 as of October 6, 2010. | |

| | | |
|---|---|---|
| 14 | Plaintiffs were aware of their default and that it could lead to the foreclosure of the Property. | |
| 15 | In November of 2010, a notice of trustee's sale (the "Notice of Trustee's Sale") was issued and subsequently recorded on November 19, 2010. | |
| 16 | The Notice of Trustee's Sale set the sale date for December 13, 2010 at 9:30 a.m. | |
| 17 | The Notice of Trustee's Sale was posted on the Property and Plaintiffs received it. | |
| 18 | The foreclosure sale was postponed from December 13, 2010 to December 27, 2010. | |
| 19 | On December 27, 2010, a foreclosure sale was held by the foreclosure trustee, defendant Recontrust. | |
| 20 | | Disputed |
| 21 | A Trustee's Deed Upon Sale was issued and recorded on January 5, 2011, memorializing the sale. | |
| 22 | Around January of 2010, Plaintiffs began discussions with a company doing business under the name of Sovereign Financial ("Sovereign"). | |
| 23 | Plaintiffs had communications with three different individuals at Sovereign: Candi Cabrera, Jamie Cabrera, and Candy Bronzi. | |
| 24 | The purpose of contacting Sovereign was to retain them to attempt to negotiate loan modifications on the Property. | |
| 25 | On or around May 24, 2010, Plaintiffs entered into a contract with Sovereign to procure a loan modification on the Property. | |
| 26 | Plaintiffs then made an upfront payment of $900 to engage Sovereign to assist Plaintiffs in obtaining a loan modification. | |
| 27 | Around June of 2010, Sovereign informed Plaintiffs by phone and email that they had submitted a loan modification application regarding the Property to BANA. | |
| 28 | Sovereign never sent Plaintiffs a copy of the submitted loan modification application. | |
| 29 | | Disputed |

24

| | | |
|---|---|---|
| 30 | | Disputed |
| 31 | | Disputed |
| 32 | | Disputed |
| 33 | An agent employed by BANA came by several times to confirm that Plaintiffs remained in the Property, but never made any representations to Plaintiffs regarding the sale of the Property. | |
| 34 | Plaintiffs contacted BANA several times regarding payment issues on their online account. | |
| 35 | In November of 2010, Plaintiffs contacted BANA directly by phone around three times. | |
| 36 | Plaintiffs never requested the reinstatement balance of their loan directly from BANA. (Plaintiffs qualifying the admission asserting in their Response that it was through Sovereign that such a request was made to BANA.) | |
| 37 | BANA never made any representations directly to Plaintiffs regarding postponement of the foreclosure sale or the loan modification application. (Plaintiffs qualifying the admission asserting that any representations were made to Sovereign.) | |
| 38 | BANA never sent Plaintiffs anything in writing stating that the foreclosure sale would be postponed. | |
| 39 | Plaintiffs relied completely on Sovereign to communicate with BANA Defendants regarding both the loan modification process and the postponement of the foreclosure sale. | |
| 40 | | Disputed |
| 41 | Sometime shortly before December 13, 2010, Sovereign informed Plaintiffs that the foreclosure sale had been postponed, but did not say to what date. | |
| 42 | Sovereign representative told G. Wendell Ulberg that they believed they could get the sale postponed due to the loan being reviewed for a modification. | |
| 43 | Until December 23, 2010, Plaintiffs were not aware that the sale date had been continued to December 27, 2010. | |

| | | |
|---|---|---|
| 44 | | Disputed |
| 45 | On December 23, 2010, Sovereign stated that they would push Defendants to postpone the sale date because Sovereign believed it was highly unlikely that Defendants would foreclose with only a fourteen-day continuance of the sale date. | |
| 46 | On December 23, 2010, Sovereign informed Plaintiffs that they would try to get the foreclosure sale postponed. | |
| 47 | Sovereign never told Plaintiffs that BANA stated it would postpone the sale date past the December 27, 2010 sale date. | |
| 48 | December 24, 2010, Mudgett, a representative of Pacific Crest, went to Plaintiffs' house. He spoke to G. Wendell Ulberg and informed him that he was going to try to purchase the Property on behalf of Pacific Crest and the sale remained set for December 27, 2010. | |
| 49 | | Disputed |
| 50 | | Disputed |
| 51 | Plaintiffs decided definitively to file for bankruptcy on December 26, 2010. | |
| 52 | Early on December 27, 2010, the date of the foreclosure sale, G. Wendell Ulberg left the Property to file his bankruptcy petition with the intent of filing it at 8:00 a.m. - before the foreclosure sale was set to occur. | |
| 53 | Sovereign initially informed G. Wendell Ulberg that the proper place to file the petition was in the Placer County Assessor's Office. | |
| 54 | G. Wendell Ulberg arrived at the Placer County's Assessor's Office at 8:00 a.m. on December 27, 2010. | |
| 55 | Upon arriving at the Placer County Assessor's Office at, G. Wendell Ulberg found that he could not file for bankruptcy there. | |
| 56 | Upon finding out he was in the wrong location to file bankruptcy, G. Wendell Ulberg headed to Sacramento to file the petition at the bankruptcy clerk's office. | |

| 57 | Upon reaching the United State Bankruptcy Court in Sacramento, G. Wendell Ulberg was further delayed in filing for bankruptcy as Sovereign had not provided him the correct forms to file for bankruptcy. | |
| 58 | | Disputed |
| 59 | Plaintiffs filed for bankruptcy on 11:01 a.m. on December 27, 2010. | |
| 60 | | Disputed |
| 61 | Plaintiffs believed there was a foreclosure moratorium because they thought they read in the news that the State of California had announced one. | |
| 62 | | Disputed |
| 63 | Plaintiffs never directly requested a reinstatement letter from BANA but were informed by Sovereign that Sovereign had requested the reinstatement letter. | |
| 64 | | Disputed |
| 65 | | Disputed |
| 66 | The sole reliance Plaintiffs plead in their first cause of action for fraud is that "Plaintiffs stopped making payments to allow review of their loan modification and refrained from actions to protect their interest in the Property, including without limitation, using their other resources or borrowing money in order to keep the account current, or filing a Chapter 13 bankruptcy to cure their arrears." | |
| 67 | The sole reliance Plaintiffs plead in their second cause of action for negligent misrepresentation is that "Plaintiffs stopped making payments to allow review of their loan modification and refrained from actions to protect their interest in the Property, including without limitation, using their other resources or borrowing money in order to keep the account current, or filing a Chapter 13 bankruptcy to cure their arrears." | |
| 68 | | Disputed |
| 69 | | Disputed |
| 70 | Plaintiffs never read the HAMP guidelines. | |

27

| 71 | Plaintiffs' cause of action in the FAC for Unfair Business Practices was dismissed as to BANA without leave to amend. | |
|----|----|----|
| 72 | Plaintiffs never communicated directly with Recontrust. | |
| 73 | Plaintiffs' belief that Recontrust would continue the sale was based solely on Sovereign's communications to Plaintiffs. | |
| 74 | This Court, in ruling on the motion to dismiss the FAC as to the misrepresentation prong of the UCL, found that Plaintiffs had not pled any facts that indicated that BANA made statements that would likely deceive the public.  (Memorandum Opinion, Ex. N, 15:21-23) | |
| 75 | This Court dismissed Plaintiffs claims in the FAC that BANA's loan modification program constituted an unfair business practice under the UCL because "the First Amended Complaint does not include any allegations about the Bank of America, N.A. loan modification program."  (Memorandum Opinion, Ex. N, 16:25-27) | |
| 76 | Plaintiffs' cause of action in the FAC for Declaratory Relief was dismissed as to BANA without leave to amend.   (Order on Bank of America, N.A.'s Motion to Dismiss Adversary Proceeding, Ex. O Memorandum Opinion, Ex. N, 20:26) | |
| 77 | The Note and the Deed of Trust are entirely bare of any provisions that provide that a foreclosure sale must be stayed pending submission of a loan modification application. | |
| 78 | The Deed of Trust provides that upon default Recontrust has a power of sale that may be exercised against the Property. | |

## Material Facts for Which There is no Genuine Dispute

There are few facts in dispute as set forth in the declarations, discovery transcripts, and exhibits.  With respect to the declarations, this bankruptcy judge considers declarations to likely be the best testimony a witness could provide.  Declarations are prepared in the calm of the attorney's office, reviewed by the witness at a non-hostile, familiar situs (usually the witness's own

28

1  office or home), the witness can provide corrections and input to
2  the attorney, and then only after the declaration has been
3  carefully refined is it signed by the witness.  The declarations in
4  connection with the present Motion have been prepared after the
5  close of discovery (January 31, 2013), which was 23 months after
6  the original complaint was filed.

7      There is no evidence that the BANA Defendants made any
8  representations directly to the Plaintiffs that the foreclosure
9  sale was not being conducted or being postponed from the
10  December 27, 2010 date.  Rather, the Plaintiffs testify that all
11  statements were made to Sovereign, as the representative of
12  Plaintiffs.  No testimony is provided by Sovereign that anyone at
13  BANA represented that the December 27, 2010 non-judicial
14  foreclosure sale would be postponed.

15      At best, the Plaintiffs' testimony is that Sovereign told them
16  that the foreclosure would have to be stayed because of the
17  "pending loan modification."  With respect to a loan modification,
18  the best the Plaintiffs could provide at their deposition was the
19  statement that Sovereign "intimated" that a loan modification for
20  the 2004 Loan was in process.[8]  Jamie Cabrera testifies that the
21  BANA representative stated that the sale should be postponed
22  because a loan modification was under active review - however,
23  there is no testimony that the BANA representative said that the
24  sale would be postponed.  With respect to continuance of the
25  non-judicial foreclosure sale, again, the Plaintiffs cannot provide
26  evidence that the BANA Defendants told the Plaintiffs or Sovereign
27
28

---

[8]  RT 63:10-17.

29

1  that the sale would be continued from the December 27, 2010 date.

2      For the contention that the sale "had to be continued under
3  HAMP," Plaintiffs did not present evidence that this loan and
4  foreclosure were subject to a stay pending any decision on a loan
5  modification.   Michael Mankarious is provided as a witness to
6  testify concerning the application of HAMP to this loan.   No
7  request was made and Mr. Mankarious was not admitted as an expert
8  witness, to the extent that he could provide testimony as to the
9  operation of the HAMP Guidelines.   Mr. Mankarious throws to the
10 court a "Handbook for Servicers of Non-GSE Mortgages" in support of
11 his testimony.[9]  This exhibit is an excerpt of what appears to a
12 document more than 63 pages in length.   (The pages provided by
13 Mr. Mankarious skip from page "3" of the table of contents to
14 page "52.") The court has not been presented with any law or
15 evidence as to why, if there was a loan modification review in
16 process, this loan would be subject to a mandatory postponement of
17 a foreclosure.

18     What is clear from the Plaintiffs testimony is that any
19 expectation they had that the foreclosure sale would be postponed
20 came from Sovereign, not the BANA Defendants.   In the FAC, the
21 Plaintiffs allege that in June 2010, they submitted "a full,
22 complete loan modification request to Bank of America pursuant to
23 the Government's HAMP Program."   However, Michael Mankarious now
24 testifies that it was on December 13, 2010, and December 18, 2010,
25 that Sovereign faxed two 70-page loan modification packages to
26 BANA.   No evidence has been presented by Sovereign with respect to

27

28

[9]  Exhibit 5, Dckt. 183.

1  an earlier loan modification request having been sent to BANA by
2  Sovereign.

3       The testimony provided by the BANA Defendants is consistent
4  with that of Mr. Mankarious. Slyapich (BANA Asst. V.P.) testifies
5  and provides information from the books and records of BANA. On
6  October 22, 2010, a telephonic request was made for a loan
7  modification by an unidentified representative of the Plaintiffs.
8  The records reflect that the request for a loan modification failed
9  based on the financial information provided.[10]  There is a similar
10  entry for October 25, 2010.

11       The phone entry for November 18, 2010, is for a conversation
12  with Candy Cabrera (authorized Sovereign third-party representative
13  of the Plaintiffs), which states that Jamie Cabrera was advised
14  that the foreclosure was in process, but a sale date had not yet
15  been set. The entry also states, "Informed 3rd Party that since
16  loan was a FNMA Loan I would need to transfer." This is consistent
17  with Slyapich's testimony that this loan was owned by Fannie Mae,
18  and therefore not subject to any foreclosure moratorium which could
19  have been in place for any BANA owned loans.

20       At the end of the day, the evidence is uncontradicted that the
21  Plaintiffs relied on their specialist, Sovereign, for any loan
22  modification applications being submitted, the legal effect of any
23  such loan modification applications, and whether the pending
24  foreclosure sale would be postponed. The Plaintiffs did not rely
25  on any representations from the BANA Defendants. Further, the
26  Plaintiffs have not provided the court with any evidence or law as
27
28
_____
    [10]  Exhibit F, Dckt. 179.

31

1  to the December 27, 2010 foreclosure sale had to be postponed.

2  **RULING**

3      Based on the evidence provided and the undisputed facts and
4  material facts for which there is no genuine dispute, the BANA
5  Defendants are entitled to judgment on all of the remaining causes
6  of action as they apply each of these respective defendants.

7

8  **First and Second Causes of Action: Fraud and
   Negligent Misrepresentation**

9      The First and Second Causes of Action are for fraud and
10 negligent misrepresentation. Under California law, the elements of
11 fraud are "(a) misrepresentation, (b) defendant's knowledge of the
12 statement's falsity, (c) Intent to . . . induce action in reliance
13 on the misrepresentation[], (d) justiciable reliance, and (e)
14 resulting damage." *Flaxel v. Johnson*, 541 F. Supp. 2d 1127, 1145
15 (S.D. Cal. 2008) (quoting *Hunter v. Up-Right, Inc.*, 6 Cal. 4th
16 1174, 1184 (1993)).   For a negligent misrepresentation claim,
17 Plaintiffs must present some evidence of the same grounds as fraud,
18 except rather than having to show a knowledge of falsity, it is
19 shown that the maker of the false statement had no reasonable
20 grounds for believing that the statement was true.   *Glenn K.*
21 *Jackson, Inc. v. Roe*, 273, F.3d 1192, 1200 n.3.   The California
22 Supreme Court has addressed this tort as one of "deceit," arising
23 under California Civil Code § 1710 ¶ 2, providing, "A deceit,
24 within the meaning of the last section [Cal Civ. § 1709. Fraudulent
25 Deceit], is either:...2. The assertion, as a fact, of that which is
26 not true, by one who has no reasonable grounds for believing it to
27 be true;..."   *Gagne v. Bertran*, 43 Cal. 2d 481, 487-488 (1954).
28 *See, City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith,*

32

1  *Inc.*, 68 Cal. App. 4th 455, 482 (1998).

2      Here, there is no genuine issue as to the BANA Defendants,
3  namely BANA, making representations to Plaintiffs or Sovereign, as
4  Plaintiffs' representative, that (i) that Plaintiffs' loan was
5  under review for modification and (ii) that the foreclosure sale
6  would be postponed pending review of the loan modification.
7  Plaintiffs have not provided evidence of Plaintiffs' loan
8  modification requests with BANA except a three-page HAMP
9  Modification Request Form dated December 13, 2010 (for a loan
10  ending in 3555) and a three-page HAMP Modification Request Form
11  dated December 18, 2010 (for a loan ending in 2084).[11]

12      Michael Mankarious (Sovereign CEO) testifies that his review
13  of the Sovereign fax records show that two 70-page loan
14  modification requests were faxed to BANA, one on December 13, 2010,
15  and the other on December 18, 2010. He states that Exhibits 3 and
16  4 are the first three pages of each of the loan modifications. Mr.
17  Mankarious provides no testimony as to why 140 pages of loan
18  modification request forms were being faxed in mid-December 2010 if
19  Sovereign had been actively working on the loan modification
20  requests since May 2010. Mr. Mankarious and the other Sovereign
21  witnesses do not provide any testimony (1) that BANA represented to
22  Sovereign that the December 27, 2010 foreclosure sale would be
23  postponed or (2) that loan modification request documents being
24  faxed to BANA on December 13, 2010, and December 18, 2010, would
25  cause the December 27, 2010 foreclosure sale to be postponed.

26      The parties do not dispute that Plaintiffs relied on
27

28
      [11]  Plaintiffs' Exhibits 3, 4.

1  statements made by Sovereign, Plaintiffs' representative, to the
2  extent   Plaintiffs   relied   on   anyone's   statements   that   the
3  non-judicial foreclosure sale would, or was required under the HAMP
4  Guidelines, be postponed.  Further, there is no dispute that prior
5  to December 27, 2010, the Plaintiffs and Sovereign were aware that
6  the   non-judicial   foreclosure   sale   would   not   be   postponed.
7  Sovereign prepared bankruptcy documents for the Plaintiffs and
8  planned with the Plaintiffs for the filing of a bankruptcy case on
9  the morning of December 27, 2010.  The evidence is uncontradicted
10 that the Plaintiffs were not relying on any representation, even
11 that of Sovereign, that the December 27, 2010 foreclosure sale
12 would be postponed.

13      There being no disputed factual issue and Plaintiffs being
14 unable   to   satisfy   the   elements   of   a   fraud   or   negligent
15 misrepresentation claim, the motion is granted as to the First and
16 Second Causes of Action.

17 **Third Cause of Action - Unfair Business Practices**

18      The third cause of action is for unfair business practices as
19 alleged against Defendant Recontrust. California Business and
20 Professions Code section 17200 provides that unfair business
21 practices include, "any unlawful, unfair or fraudulent business act
22 or practice and unfair, deceptive, untrue or misleading advertising
23 and any action prohibited by Chapter 1 (commencing with Section
24 17500)."  Section 17500 includes "false or misleading statements."
25 However, "The 'fraud' prong of the Business and Processions Code
26 section 17200 is unlike common law fraud or deception. A violation
27 can be shown even if no one was actually deceived, relied upon the
28 fraudulent practice, or sustained any damage. Instead, it is only

1  necessary to show that members of the public are likely to be
2  deceived." *Podolsky v. First Healthcare Corp.*, 50 Cal. App.
3  4th 632, 647-48 (1996) (citing *Committee on Children's Television,*
4  *Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 211 (1983)).

5      The third cause of action was previously dismissed as against
6  Bank of America on November 29, 2011. (Dckt. 109).

7      Plaintiffs have not provided evidence that Recontrust engaged
8  in unfair business practices, or that its practices are likely to
9  mislead the public.  Plaintiffs communicated with Sovereign, and
10  Recontrust was merely the foreclosure trustee.  Plaintiffs further
11  do not oppose the granting of summary judgment on this Third Cause
12  of Action.

13      There being no disputed factual issue and Plaintiffs being
14  unable to provide evidence of Recontrust's allegedly deceptive
15  practices, the motion is granted as to the third cause of action
16  against Defendant Recontrust.

17
18  **Fourth Cause of Action --Intentional**
    **Interference with Contractual Relations**

19      The fourth cause of action is for intentional interference
20  with contractual relations. Plaintiffs do not request relief under
21  the Fourth Cause of Action against BANA, but only Recontrust.  A
22  claim for intentional interference with contractual relations
23  requires that Plaintiffs establish the following elements: (i)
24  Plaintiffs had a valid and existing contract; (ii) Defendant had
25  knowledge of the contract and intended to induce its breach; (iii)
26  contract was in fact breached by contracting party; and (iv)
27  Plaintiffs suffered damage. *Savage v. Pacific Gas & Electric Co.*,
28  21 Cal. App. 4th 434, 448 (Cal. App. 1st Dist. 1993).

1    The BANA Defendants seek an order granting summary judgement
2  as to the fourth cause of action against Recontrust.

3    Here, Plaintiffs fail to provide evidence in support of the
4  second, third, and fourth elements for this cause of action.  There
5  is no evidence that Recontrust was involved in the alleged loan
6  modification requests, the decision-making by BANA as to any
7  requests for loan modifications, or taking any action to induce
8  BANA to have the non-judicial foreclosure sale conducted or not
9  conducted.  There is no evidence presented that a breach of the
10 contract, the note and deed of trust, occurred or was induced to
11 occur by Recontrust.  Rather, the uncontradicted evidence presented
12 is that a non-judicial foreclosure sale was conducted based on the
13 defaults in payments on the note by Plaintiffs and at the direction
14 of BANA.  No evidence was presented that there was any other
15 contract, such as to postpone the December 27, 2010 non-judicial
16 foreclosure sale.  No evidence is presented that Recontrust had any
17 involvement in deciding when to enforce the note and deed of trust
18 other than at BANA's instruction.

19    There being no disputed factual issues and Plaintiffs being
20 unable to provide evidence of the intentional interference with a
21 contract by Recontrust, the motion is granted as to the fourth
22 cause of action against Defendant Recontrust.

23
   **Fifth, Sixth, and Seventh Causes of Action - Cancellation**
24 **of Trustee's Deed, Quiet Title, and Declaratory Relief**

25    Summary judgment is granted the BANA Defendants on the
26 remaining causes of action for Cancellation of Trustee's Deed
27 (Fifth Cause of Action), Quiet Title (Sixth Cause of Action), and
28 Declaratory Relief (Seventh Cause of Action) because the

36

1   Plaintiffs' claims are dependent upon prevailing on the First,
2   Second, Third, and Fourth Causes of Action to render the
3   non-judicial foreclosure sale invalid. Plaintiffs have not
4   provided any evidence to raise any genuine dispute as to material
5   facts concerning BANA and Recontrust having conducted the
6   December 27, 2010 non-judicial foreclosure sale, BANA having
7   acquired title to the Property through the non-judicial foreclosure
8   sale, and BANA having superior title to the property by virtue of
9   the Trustee's Deed issued from the non-judicial foreclosure sale.

10
                    **REQUEST FOR RELIEF BY PACIFIC CREST**
11                  **PARTNERS, INC. and JOHN MUDGETT**

12       Pacific Crest and Mudgett, defendants, filed a response to the
13   BANA Defendants' Motion for Summary Judgment. These two Defendants
14   provide no evidence with the Response, but argue that the court
15   should grant them summary judgment as well pursuant to Federal Rule
16   of Civil Procedure 56(f) and Federal Rule of Bankruptcy Procedure
17   7056. This rule allows the court to grant summary judgment to a
18   non-moving party. If the court does not grant such relief, these
19   two Defendants request that the court make a summary adjudication
20   of issues pursuant to Federal Rule of Civil Procedure 56(g) and
21   Federal Rule of Bankruptcy Procedure 7056.

22       The substance of the Pacific Crest and Mudgett argument is
23   that since Pacific Crest claims title to the Property by the
24   Trustee's Deed received from the foreclosure sale, if BANA prevails
25   on its summary judgment motion, then so should Pacific Crest and
26   Mudgett. Other than citing to the two paragraphs of Federal Rule
27   of Civil Procedure 56 and making allegations in the two-page
28   motion, these Defendants offer the court little in support of the

1  relief requested.

2      The court declines to exercise the power to enter summary
3  judgment for a non-moving party in connection with the present
4  motion for several reasons.  First, Pacific Crest and Mudgett are
5  not parties to the present motion.  The motion was filed against
6  the Plaintiffs by the BANA Defendants.  Through a "Response"
7  Pacific Crest and Mudgett seek to effectively intervene and force
8  their way into the motion.  No provision is made under the Federal
9  Rule of Civil Procedure to force a "joinder" as a party for someone
10  else's motion.[12]

11      Prior to the 2010 amendment to the Federal Rule of Civil
12  Procedure, the federal trial courts could *sua sponte* grant summary
13  judgment to a non-moving party.   *Cool Fuel, Incorporated, v.*
14  *Connett*, 685 F.2d 309 (9th Cir. 1982), affirming granting of
15  summary judgment for the party against whom the motion for summary
16  judgment was filed.  More recently, in *Voggenthaler v. Maryland*
17  *Square Shopping Center, LLC*, 724 F.3d 1050, 1066 (9th Cir. 2013),
18  the Ninth Circuit Court of Appeals stated,

19          The district court granted summary judgment against
        the operator, SBIC, *sua sponte*, followed by a RCRA
20      permanent injunction. This was error, because the
        homeowner plaintiffs in the RCRA suit never moved for
21      summary judgment against SBIC.

22          There are only two general situations where a district
        court may *sua sponte* enter summary judgment; neither
23      applies to this case. A district court may enter summary
        judgment against a party that has moved for summary
24      judgment when the court determines the moving party
        cannot prove its case at trial. *See, Gospel Missions of*
25      *Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir.

26  _____

27      [12]  This is not Pacific Crest's and Mudgett's first improper
    attempts to ride the coattails of BANA and "join" in a motion.  *See*
28  Memorandum Opinion and Decision for Motion to Dismiss, 2:22-28, Dckt.
    109.

2003); *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982). Here, SBIC did not ask for summary judgment in the homeowners' RCRA case. The second situation is when a Fed. R. Civ. P. 12(b)(6) motion is converted into a motion for summary judgment under Rule 56 by consideration of materials outside the pleadings. Fed. R. Civ. P. 12(d). That did not occur here either.

As in *Voggenthaler*, neither of the two possible situations exist. This was not a Rule 12(b)(6) motion converted to a summary judgment and Pacific Crest and Mudgett are not parties against whom summary judgment has been sought.

Second, while Pacific Crest and Mudgett try and force their way in and request such relief, the court has not given Plaintiffs notice and an opportunity to respond (Fed. R. Civ. P. 56(f)) to the granting of the motion for these "non-moving" defendants who are not parties to the present motion. While there may remain little at issue with the granting of summary judgment to the BANA Defendants, the Plaintiffs do get their "day in court" on the question if Pacific Crest and Mudgett should be granted summary judgment.

Finally, the court issued a preliminary injunction enjoining Pacific Crest and Mudgett, and each of them, from engaging in certain conduct during this Adversary Proceeding.[13] This order includes the requirement of the Plaintiffs to fund a $2,000.00 a month deposit in lieu of a Federal Rule of Civil Procedure 65(c) bond for costs and damages, if any, to Pacific Crest and Mudgett. The request for injunctive relief and the cash bond must be addressed in connection with any request for judgment by these two Defendants.

---

[13]   Preliminary Injunction, Dckt. 41.

1   The Response of Pacific Crest and Mudgett for a non-moving
2   party grant of summary judgment or summary adjudication is denied
3   without prejudice.

4                              **CONCLUSION**

5   BANA is granted summary judgment on the First Cause of Action
6   for Fraud, Second Cause of Action for Negligent Misrepresentation,
7   Fifth Cause of Action for Rescission or Cancellation of Trustee's
8   Deed, and Sixth Cause of Action for Quite Title.  The court having
9   previously dismissed the Third Cause of Action for Unfair Business
10  Practices and Seventh Cause of Action for Declaratory Relief, the
11  granting of the Summary Judgment Motion resolves all claim asserted
12  against BANA.  No claims have been asserted by Plaintiffs against
13  BANA in the Fourth Cause of Action for Intentional Interference
14  with Contractual Relation and Eighth Cause of Action for Injunctive
15  Relief.

16  Recontrust is granted summary judgment on the First Cause of
17  Action   for   Fraud,   Second   Cause   of   Action   for   Negligent
18  Misrepresentation,  Third  Cause  of  Action  for  Unfair  Business
19  Practices, Fourth Cause of Action for Intentional Interference with
20  Contractual Relations, Fifth Cause of Action for Rescission or
21  Cancellation of Trustee's Deed, Sixth Cause of Action for Quite
22  Title, and Seventh Cause of Action for Declaratory Relief.  No
23  claims under the Eighth Cause of Action for Injunctive Relief are
24  asserted against Recontrust.  The granting of the Summary Judgment
25  Motion resolves all claim asserted against Recontrust.

26  Pursuant to Federal Rule of Civil Procedure 54(b) and Federal
27  Rule of Bankruptcy Procedure 7054 the court will enter a separate
28  judgment for BANA and Recontrust, and each of them, and against

1   G. Wendell Ulberg and Kathleen Ulberg, and each of them, this
2   summary judgment motion having resolved all claims as against the
3   BANA Defendants.

4        This Memorandum Opinion and Decision constitutes the court's
5   proposed findings of fact and conclusions of law pursuant to
6   Federal Rule of Civil Procedure 52 and Federal Rule of Bankruptcy
7   Procedure 7052 and 28 U.S.C. § 157(c)(1).

8        This Memorandum Opinion and Decision is submitted to the
9   United States District Judge assigned to the case, pursuant to the
10  provisions of 28 U.S.C. § 157(c)(1) and FRBP 9033.  Within 14 days
11  after being served with this Memorandum Opinion and Decision, any
12  party may file written objections with the court and serve a copy
13  on all parties.  Such a document should be captioned "Objections to
14  Bankruptcy Judge's Memorandum Opinion and Decision."

15  Dated: October 22, 2013

16

17                    RONALD H. SARGIS, Judge
18                    United States Bankruptcy Court
19
20
21
22
23
24
25
26
27
28

41

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked _____, via the U.S. mail.

       Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __XX____ Other Persons Specified Below:

Office of the U.S. Trustee
Robert T. Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Scott A. CoBen
1214 F Street
Sacramento, CA 95814

Adam N. Barasch
One Embarcadero Center, Suite 2600
San Francisco, CA 94111